UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  08-23045-CIV-MARTINEZ-BROWN

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARIA C. CALZON,

    Defendant.
_____/

### COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

    This matter came before the Court for a non-jury trial on May 18, 2009. Plaintiff United States of America ("Plaintiff" or "United States") filed suit against Defendant Ms. Maria C. Calzon ("Defendant" or "Ms. Calzon") on the behalf of the United States Department of Education ("the Department"), alleging that Defendant defaulted on a student loan held by the Department.  The Court has carefully considered the testimony of the witnesses, the exhibits in evidence, the applicable law, and the arguments presented by counsel.  The Court now enters the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52.  Any findings of fact which should be treated as conclusions of law are to be treated as such, and any conclusions of law that should be treated as findings of fact should also be treated as such.

### Findings of Fact

    On April 25, 2000, Defendant Ms. Calzon re-consolidated her student loans, executing a promissory note to pay off her balances pursuant to the federal government's Federal Direct Loan

Program. Exh. 1; (D.E. No. 36 at 4). She elected to repay her loan under the Income Contingent Repayment Plan under which the monthly repayment amount is based on the amount of her loan, her family size, and the adjusted gross income of her and her spouse. Exh. 7 at 2. The Department is the holder of this note and by signing this note Ms. Calzon promised "to pay . . . all sums . . . disbursed under the terms of . . . [the] [p]romissory [n]ote." Exh. 7 at 3; s*ee also* Exh. 1 at 3.

On October 23, 2000, the consolidated loan was disbursed in the amount of $144,222.77. Rough Tr.[1] at 29; Exh. 8C.[2] The interest rate on Ms. Calzon's original loan was 9%. Exh. 6; Rough Tr. at 26. Because the promissory note provides that the interest rate on her consolidated loan would be "based on the weighted average of the interest rates on the loans being consolidated, . . . but shall not exceed 8.25%," the interest rate applied to the consolidated loan is 8.25%. Exh. 1 at 4. It is undisputed that Ms. Calzon has not made any payments on this consolidated loan. Rough Tr. at 38.

The promissory note states in relevant part that Ms. Calzon would be considered in default of her loan if she failed "to make installment payments when due . . . and . . . [the Department] reasonably concludes. . . [she] no longer intend[s] to honor . . . [her] repayment obligation." Exh. 1 at 4. The note also provides that if Ms. Calzon defaulted on the loan then "at the option" of the Department, "the entire unpaid balance shall become immediately due and

---

[1] This refers to a rough copy of the transcript.

[2] It is undisputed that $144,222.77 is the amount that was disbursed to pay off Defendant's original loan. Rough Tr. at 29; Rough Tr. Part II at 21. The Court finds Defendant's arguments that the amount of the loan is unclear are without merit. The document admitted as Defendant's Exhibit A was mistakenly issued, and it has marginal relevance to this case. Rough Tr. Part II at 19-23; *see also* Def. Exh. A.

payable." *Id*.

The evidence presented at trial demonstrates that a clear deadline for Ms. Calzon's first payment was established. The promissory note provides that her first payment was due "within 60 days of the first disbursement of . . . [the] [l]oan." Exh. 1 at 4. The promissory note also provides that Ms. Calzon is bound by the terms of the Borrower's Rights and Responsibilities[3], Exh. 1 at 3, which also provides that her first payment was due "within 60 days of the first disbursement of . . . [the] [l]oan." Exh. 7 at 2. Thus, because the loan was disbursed on October 23, 2000, Ms. Calzon's first payment was due no later than December 22, 2000. It is undisputed that no payment was received by this date or at any other time.

The amount of Defendant's installment payments and their due dates, with the exception of the time frame for the first payment, are not provided for in the promissory note. The promissory note, however, does state that "[w]hen the loan(s) that . . . [Ms. Calzon was] consolidating . . . [were] paid off . . . [she would] be sent a Disclosure Statement and Repayment Schedule." Exh. 1 at 4. Alberto Francisco ("Mr. Francisco"), a senior loan analyst for the Department, testified at trial that while no copy of the Disclosure Statement and Repayment Schedule has been maintained, he believes it was sent out because it is standard operating procedure to send out such a statement and schedule. Rough Tr. at 32-35; 65. Defendant stated at trial while she was acting as her counsel that the defense's "position" was that the Disclosure and Repayment Schedule was never sent out. Defendant offered no evidence at trial to support this "position," not even her own testimony. Given the lack of evidence to support her position,

---

[3]The promissory note also provides that "[i]mportant additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying the note." Exh. 1 at 4.

and Mr. Francisco's credible testimony that it was standard operating procedure to send out this statement and repayment schedule, the Court finds the Disclosure and Repayment Schedule was sent to Ms. Calzon.

In addition, Mr. Francisco testified at trial that a number of other billing statements and late payment notices were sent to Ms. Calzon, notifying her of the amount of payment due, when such payments were due, and letting her know when payments were past due. Rough Tr. at 35, 38-40; Exh. 8C at 3-4. The Department did not maintain the actual documents sent to Ms. Calzon.  Mr. Francisco testified that these letters and notices were sent out based on the borrower history and activity report, Exh. 8C, which lists the various letters and notices sent to Ms. Calzon and the dates these letters and notices were sent. Rough Tr. at 33-40.  Mr. Francisco was not able to testify as to the exact dates for payment and the payment amounts these letters stated but instead testified as to the general content of these letters based upon what was put in those letters and notices in the ordinary course of business. *Id*.

More importantly, even if the notices or bills or even the Disclosure Statement and Repayment Schedule were never sent to Ms. Calzon, the Borrower's Rights and Responsibilities, which Ms. Calzon agreed to be bound by in signing the promissory note, provides that she "must make payments on  . . . [her] loans even if  . . . [she did] not receive a bill or repayment notice. Billing information is sent . . . as a convenience and  . . . [Ms. Calzon was] obligated to make payments even if . . . [she] did not receive any notice." Exh. 7 at 2.

Finally, the amount of Ms. Calzon's installment payments is also established in the Borrower's Rights and Responsibilities, which provides that until the Department received the information needed to calculate her monthly repayment amount from the Internal Revenue

Service under the Income Contingent Repayment Plan her payments were "equal the amount of the interest that has accrued on . . . [her] loan." Exh. 7 at 2. In addition on the Repayment Plan Selection form signed by Ms. Calzon it states that her payment amount would "be the amount of the interest that accumulates monthly on . . . [her] loan until . . . [the Department received her] income information." Exh. 2 at 1; Exh. 5 at 1.

Mr. Francisco testified at trial that to aid in the calculation of her payment amount under the Income Contingency Repayment Plan, numerous letters requesting additional information regarding her income were sent to Ms. Calzon. Rough Tr. at 36-37; *see also* Exh. 8C.[4] Ms. Calzon has not offered any evidence to dispute Mr. Francisco's testimony.[5] Thus, because it is undisputed that the Department did not have sufficient information to calculate her payment amount under her chosen plan, Ms. Calzon was obligated to make payments equal to the monthly accrued interest. *See* Exh. 2 at 1; Exh 5 at 1. Exh. 7 at 2.

In conclusion, the Court finds that Ms. Calzon signed the promissory note, that she was informed of the dates when the monthly payments were due, that she was aware of the amount of

---

[4] The Department again did not retain the original letters sent to Ms. Calzon, and Mr. Francisco was again testifying based upon the borrower history and activity report and his knowledge of what is in the ordinary course of business contained in the letters listed in this report. Rough Tr. at 33-40. The Court again finds Mr. Francisco's testimony credible. It is undisputed that Ms. Calzon never responded to these requests for information. *Id*. at 44.

[5] Mr. Francisco testified on Defendant's cross-examination that the Income Contingent Payment Plan could be based on either information from the Internal Revenue Service or the borrower. Rough Tr. (continuation) at 6. The Court acknowledges that Ms. Calzon and her spouse filled out two Consent to Disclosure of Tax Information forms, s*ee* Exhs. 3 and 4; however, this does not mean that the Department had sufficient information to calculate Ms. Calzon's payments. The fact remains that the Department requested additional information to calculate Ms. Calzon's payments, demonstrating that whatever information they had was not sufficient, and Ms. Calzon ignored their requests.

each monthly payment, and that she failed to make any payments on the subject loan. Thus, because Ms. Calzon has missed years of payments, it is reasonable for the Department to conclude that she no longer intends to honor her obligation and to pursue this default action.

### Conclusions of Law

"To recover on a promissory note, the government must show (1) the defendant signed it, (2) the government is the present owner or holder, and (3) the note is in default." *United States v. Lawrence*, 276 F. 3d 193, 197 (5th Cir. 2001). There is no dispute in this case that Ms. Calzon signed the promissory note and that the United States is its present holder. The dispute in this case centers on whether Defendant Ms. Calzon has defaulted on her promissory note. Plaintiff argues that Defendant is in default for failure to make any payments with respect to the loan addressed in the promissory note. Defendant responds that Plaintiff has failed to demonstrate that she is in default because there is insufficient evidence that she was given notice of the amount of installment payments due and of the time when such payments were due. *See* (D.E. No. 48 at 3-6). After careful consideration, the Court finds Defendant's arguments are without merit, and Plaintiff has demonstrated that Defendant is in default on the promissory note.

The promissory note states in relevant part that Ms. Calzon would be considered in default of her loan if she failed "to make installment payments when due . . . and . . . [the Department] reasonably concludes. . . [she] no longer intend[s] to honor . . . [her] repayment obligation." Exh. 1 at 4. It is clear from the evidence presented at trial that the amount of Ms. Calzon's installment payments was the interest which accrued on her loan as the Department had not yet calculated her payment amount under the Income Contingent Repayment Plan. Exh. 7 at 2; Exh. 8C; Rough Tr. at 36-37. It is also clear that Ms. Calzon's first installment payment was

due within 60 days of the disbursement of her loan, which occurred on October 23, 2000, making her first payment due no later than December 22, 2000. Exh. 1 at 3; Exh. 7 at 2. No evidence was presented as to the exact dates the other installment payments were due; however, evidence was presented that the Disclosure and Repayment Schedule and billing notices containing such information was provided to Defendant.[6] Rough Tr. at 32-35, 38-40; 65; Exh. 8C. Thus, Defendant failed to make installment payments when due and in this case, where it is undisputed that no payments were ever received on this loan for over eight years, the Court finds that it was reasonable for Plaintiff to conclude that Defendant did not intend to honor her obligation and to find her in default.

Pursuant to the terms of the promissory note, because Defendant is in default, the Department may exercise its option and demand that all unpaid principal and interest. The amount of principal due in this case is $144,222.77. Rough Tr. at 29; Exh. 8C. The interest rate applied to this amount is 8.25%, resulting in $102,423.84 of interest due.[7] *See* Exh. 1 at 4; Exh.

---

[6] The Court finds Defendant's argument that she is not in default because Plaintiff failed to provide her with the Disclosure Statement and Repayment Schedule is without merit both because the Court has found that she was provided with this statement and schedule, *supra* p. 3, and because even if she was not provided with this document, she was still obligated to pay her loan, *see* Exh. 7 at 2. Moreover, the date of her first payment, which she failed to make along with all other payments, is explicitly stated in both the promissory note and in the Borrower's Rights and Responsibilities. Exh. 1 at 3; Exh. 7 at 2. Defendant's payment on the promissory note was in no way contingent upon her receipt of the Disclosure Statement and Repayment Schedule.

[7] This number was calculated as follows using the formula, interest = principal x rate x time.
- October 23, 2000-December 31, 2000 = 69 days
  $(144,222.77)(.0825)(69/365) = \$2,249.28$
- 2001-2008 = 8 full years
  $(144,222.77)(.0825)(8) = \$95,187.02$
- January 1, 2009-June 3, 2009 = 153 days

6; Rough Tr. at 26. Thus, the total amount Defendant owes to Plaintiff is $246,646.61.[8]

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Pursuant to Federal Rule of Civil Procedure 58, judgment shall be entered by separate written order in favor of the Plaintiff United States of America and against Defendant Ms. Maria C. Calzon in the amount of $246,646.61.

2. This Case is **CLOSED** and all pending motions are **DENIED** as **MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 3 day of June, 2009.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record

---

$(144,222.77)(.0825)(153/365) = \$102,423.84$
- TOTAL: $2,249.28 + $95,187.02 + $4987.54 = $102,423.84

[8] In her Answer, Defendant asserted a number of affirmative defenses including laches, estoppel and setoff, which she failed to address at trial. *See* (D.E. No. 10). As Defendant did not offer any evidence to support these defenses and did not discuss these defenses again, the Court has not considered them.